UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

IVAN E. BAILEY,

          Plaintiff,

v.                                           Case No. 5:06-cv-21-Oc-10GRJ

MICHAEL J. ASTRUE,[1] Commissioner of
Social Security,

          Defendant.
_____/

## ORDER

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying his applications for a period of disability and disability insurance benefits. (Doc. 1.) The Commissioner has answered (Doc. 3), and both parties have filed briefs outlining their respective positions. (Docs. 12 & 14). For the reasons discussed below, the Commissioner's decision is due to be **REVERSED** and **REMANDED.**

## I. PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability and disability insurance benefits on March 26, 2002, alleging disability commencing on January 14, 2001. (R. 15.)[2] Plaintiff's application was denied initially (R. 54-55) and upon reconsideration. (R.

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted, therefore, for Commissioner Jo Anne B. Barnhart as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The record does not contain Plaintiff's application for Social Security benefits. However, this is the date used in the ALJ's decision and the date used in Plaintiff's brief. The Commissioner's brief uses the date August 31, 2001. This date, however, is not supported by the record cited by the Commissioner. The Court, therefore, assumes it is a typographical error.

52-53.) Plaintiff requested a hearing before an Administrative Law Judge, which was held on September 1, 2004. (R. 23-51.) On January 14, 2005, following the hearing, Administrative Law Judge Robert D. Marcinkowski (the "ALJ") issued a decision unfavorable to Plaintiff. (R. 12-22.) Plaintiff's request for review of that decision was denied by the Appeals Council on November 17, 2005 (R. 3), rendering the ALJ's decision the final decision of the Commissioner. On January 17, 2006, Plaintiff filed the instant appeal to this Court of the Commissioner's final decision. (Doc. 1.)

## II. **STANDARD OF REVIEW**

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[3] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[4]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[5] The district court must view the evidence as a whole, taking

---

[3] See 42 U.S.C. § 405(g).

[4] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[5] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

into account evidence favorable as well as unfavorable to the decision.[6] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[7]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[8] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[9]

The ALJ must follow five steps in evaluating a claim of disability.[10] First, if a claimant is working at a substantial gainful activity, she is not disabled.[11] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does

---

[6] Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[7] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[8] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2003) (All further references to 20 C.F.R. will be to the 2003 version unless otherwise specified.).

[9] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[10] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[11] 20 C.F.R. § 404.1520(b).

not have a severe impairment and is not disabled.[12] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[13]  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.[14] Fifth, if a claimant's impairments (considering her residual functional capacity ("RFC"), age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[15]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[16] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[17] The Commissioner may satisfy this burden by pointing to the Grids for a conclusive determination that a claimant is disabled or not disabled.[18]

---

[12] 20 C.F.R. § 404.1520(c).

[13] 20 C.F.R. § 404.1520(d).

[14] 20 C.F.R. § 404.1520(e).

[15] 20 C.F.R. § 404.1520(f).

[16] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). See also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[17] Doughty, 245 F.3d at 1278 n.2.  In Doughty the court explained this burden shifting as follows:
In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

[18] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion."[19] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[20]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[21] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[22] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

### III. SUMMARY OF THE RECORD EVIDENCE

Plaintiff, born on May 25, 1944, was sixty years old at the time of the ALJ's decision. (R. 27.) He completed schooling through the eighth grade but later obtained his GED. (R. 28.) Since 1986, Plaintiff has worked as a farm laborer, warehouse furniture laborer, van driver helper, van driver and car salesman. (R. 29-32, 45-46.)

---

[19] Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996). See Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

[20] Walker, 826 F.2d at 1003.

[21] Wolfe, 86 F.3d at 1077-78.

[22] *Id*.

On November 9, 1988, Plaintiff was injured while working at a furniture warehouse. (R. 85-86, 148.) Plaintiff was lifting a heavy refrigerator when it began to fall on him. Plaintiff tried to catch it and something pulled in his back. The refrigerator fell on his toe. (R. 148.) Plaintiff was then restricted from heavy labor, involving lifting more than 30 pounds, and from tasks that involved pushing, pulling, bending and twisting. (R. 85.)

Plaintiff sought medical care at Care One Outpatient Medical Center ("Care One") for his injuries. (R. 148.) Michael J. Webb, M.D. of Care One began examining Plaintiff for his status post-injury on November 18, 1988. (R. 151.) Plaintiff continued to see Dr. Webb and other doctors at Care One for evaluations regarding his toe and low back pain on a monthly basis. (R. 154-166.) Dr. Webb diagnosed Plaintiff with a herniated disk[23] at L5-S1 and prescribed the prescriptions Salsalate and Rocarbamol for Plaintiff's back pain. (R. 165. ) Dr. Webb continued to examine Plaintiff and prescribed Darvocet for Plaintiff's back pain on November, 13, 1990. (R. 167, 169-170.)

Thereafter, Dr. Webb evaluated Plaintiff on a yearly basis. (R. 171-72, 175-179.) During that time period, Dr. Webb prescribed Salicylate and Tylenol, as well as walking for routine exercise. (R. 175.) In 1995, Dr. Webb diagnosed Plaintiff with chronic lumbar pain with recent exacerbation and referred Plaintiff for chiropractic treatment. (R. 176.) Through 1996 and 1997, Plaintiff continued to seek chiropractic care as directed, but continually reported increased lumbar pain. (R. 177-178.)

---

[23] Protrusion of a degenerated or fragmented intervertebral disk into intervertebral foramen with potential compression of a nerve root or into the spinal canal with potential compression of the cauda equina in the lumbar region or spinal cord at higher levels.  Lippincott, Williams & Wilkins, Stedman's Medical Dictionary (27th ed. 2000).

In August of 1998, Plaintiff complained of more frequent back pain, including awakening during the night and stiffness in the morning. (R. 179.) Dr. Webb, again, recommended regular walking as exercise and stretching exercises, and prescribed Arthrotec and Soma. Id. On November 1, 1999, Dr. Webb evaluated Plaintiff and noted that Plaintiff reported exacerbating episodes of radicular pain, including a one-week incapacitation. (R. 181.) Dr. Webb changed Plaintiff's prescription to Celebrex and Oxycoton. Id.

From October 1989 through January 2001, Plaintiff worked as a car salesman full-time, 60-70 hours a week. (R. 32.) Plaintiff had a heart attack in May of 2000 and thereafter, returned to part-time work, 50 hours a week. Id. Plaintiff claims that he became disabled on January 14, 2001 due to chest pain and shortness of breath stemming from the heart attack. (R. 32, 85.) Specifically, Plaintiff claims that the chest pains and previous back problems interfered with his ability to work 50 hours a week as a car salesman. (R. 32.)

Dr. Webb's progress notes from July 19, 2002 confirm Plaintiff's continued chronic lumbar pain complaints with radiculpathy due to the herniated disk. (R. 182.) On October 14, 2002, Dr. Webb recorded that Plaintiff was not working since January of 2001. (R. 186.) In subsequent progress notes from 2003, Dr. Webb noted that Plaintiff suffered from moderate to severe chronic lumbar pain and that Plaintiff had tenderness or spasms, abnormal postural or gait, and decreased range of motion. (R 334-35.) Dr. Webb noted that Plaintiff's conditions had worsened and prescribed Amitriptyline in addition to the prescriptions he had previously prescribed. (R. 334.)

As Plaintiff's treating physician, Dr. Webb evaluated Plaintiff's physical capacities on January 20, 2003. (R. 298.) Dr. Webb assessed that Plaintiff could not carry weight over ten (10) pounds; could only rarely bend, stoop or reach; and retained the physical capacity to stand or walk for a total of two (2) to three (3) hours in an 8-hour workday and to sit for five (5) to six (6) hours in an 8-hour workday - all consistent with sedentary work. Id.

A. Depaz, M.D. evaluated Plaintiff's physical limitation on December 8, 2002. (R. 297.) Dr. Depaz found that Plaintiff could not carry weight over ten (10) pounds; could only rarely bend, stoop or reach; and retained the physical capacity to stand or walk for a total of one (1) hour in an 8-hour workday and to sit for two (2) hours in an 8-hour workday. Id. Dr. Depaz also noted that Plaintff would likely be absent for four days of work per month. Id.

At the request of the Office of Disability Determinations, Plaintiff underwent a consultative examination with Adam Alpers, D.O. on July 9, 2002. (R. 286-88.) Dr. Alpers noted the prescriptions Plaintiff was taking, including Isotin, Mavik, Zocor, Flexiril, Oxycontin, Celebrex, Ibuprofen and naturalistic vitamins and herbs. (R. 287.) Dr. Alpers assessed Plaintiff and found a herniated disk with surgery recommended, myocardial infarction, angioplasty with stent placement and chronic back pain. (R. 288.) Dr. Alpers concluded that "job retraining should be considered to prepare the patient to do sedentary duty with occasional changes in position permitted." Id. During the evaluation, Dr. Alpers did note that "patient has normal gait when not being observed. He walks on his left toe when being observed." (R. 287.)

For a mental evaluation, the Office of Disability Determinations sent Plaintiff to Rodney A. Poetter, Ph.D. on February 11, 2003. Dr. Poetter's history discloses that Plaintiff previously never participated in mental health treatment with the exception of some group marital therapy. (R. 309.) Finding no significant mental issues, Dr. Poetter diagnosed Plaintiff with Adjustment Disorder with Depressed Mood. Id.

After receiving Dr. Poetter's report, Plaintiff's counsel referred Plaintiff to William Corwin, M.D. for a consultative psychiatric evaluation on April 8, 2003.  (R. 324.) The history taken by Dr. Corwin noted that there were no previous records concerning prior emotional problems. (R. 324.) Dr. Corwin found Plaintiff's memory to be impaired and diagnosed Plaintiff with Major Depressive Disorder, Obsessive-Compulsive Disorder, and Occupational, economic and other psychosocial problems. (R. 326.) Moreover, Dr. Corwin performed a psychological assessment of Plaintiff's mental impairments and evaluated their effect on Plaintiff's ability to perform in a regular work setting. (R. 327-331.) Dr. Corwin found that the impairments are severely limiting. (R. 329-331.)

During the hearing, Plaintiff testified that he experiences chronic back pain and chest pain, preventing him from performing his previous job as a car salesman. (R. 32, 36-38, 41.) Plaintiff also complained of consistent depression, manifested by social withdrawal, sleep disturbance and loss of interest in activities. (R. 38-40.)

## IV. DISCUSSION

The ALJ erred in assessing Plaintiff's RFC because it was not based on substantial evidence. Specifically, the ALJ's reasons for concluding that Plaintiff can perform light work and rejecting Dr. Webb's opinion that Plaintiff can only perform sedentary work were not supported by and were somewhat contrary to the record.

In his RFC assessment, the ALJ exclusively relied on the non-examining state agency medical physicians in concluding that Plaintiff could perform light work.[24] (R. 19-20.)[25] In contrast, Dr. Webb, a treating physician, restricted Plaintiff to sedentary work.[26] (R. 298.)[27]

It is well established that if a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial

---

[24] "Light work" is work which:
> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567

[25] The ALJ found that Plaintiff retained the residual functional capacity lift and/or carry up to ten (10) pounds frequently and twenty (20) pounds occasionally, stand and/or walk a total of six (6) hours total in an 8-hour workday and sit for about six (6) hours in an 8-hour workday. The ALJ did find that Plaintiff was restricted to only occasional climbing of ramps and stairs, and occasional balancing, stooping, couching and crawling. And Plaintiff was completely restricted from climbing ladders, ropes and scaffolds, concentrated exposure to pulmonary irritants and work at heights or around hazardous machinery. R. 19.

[26] "Sedentary work" is work which:
> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). Social Security Ruling 83-10 defines "occasionally" as "occurring from very little up to one-third of the time." At the sedentary level of exertion, "occasionally" with regard to standing means the ability to stand two hours or less in an eight-hour workday

[27] Dr. Webb found that Plaintiff cannot carry weight over ten (10) pounds and can only rarely bend, stoop or reach. Dr. Webb also observed that Plaintiff retained the physical capacity to stand or walk for a total of two (2) to three (3) hours in an 8-hour workday and to sit for five (5) to six (6) hours in an 8-hour workday. Dr. Webb placed these restrictions on Plaintiff's activities to alleviate the pain caused by Plaintiff's herniated disk. R. 298.

evidence in the record, the ALJ must give it controlling weight.[28] The ALJ may of course discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.[29] In the instant case, the reasons articulated by the ALJ for rejecting the opinion of Plaintiff's treating physician are inconsistent with the record as a whole.

One of reasons discussed by the ALJ for discounting Dr. Webb's opinion was because Dr. Webb had "not seen Plaintiff since October 2002." (R. 19.) This statement, however, is entirely incorrect. The record contains progress notes from Dr. Webb dated January 20, 2003 and July 15, 2003 evidencing that Dr. Webb indeed treated Plaintiff for more than nine months after October 2002. (R. 334-335.) These two visits are particularly important because they illustrate that Plaintiff continued to suffer from pain and document that Dr. Webb reported a worsening of Plaintiff's symptoms. (R. 334.)

The ALJ also discounted the opinion of the treating physician on the grounds that Dr. Webb's opinion was "not supported by the objective medical evidence." The record reflects, however, that the other physicians, who actually examined Plaintiff and assessed Plaintiff's physical limitations, made assessments similar to the assessment by Dr. Webb. Dr. Alpers performed a consultative examination of Plaintiff at the request of the Division of Disability Determination (R. 286-88.) Although Dr. Alpers did generally note that "the patient has a normal gait when not being observed," he, nonetheless, concluded that Plaintiff has the RFC to perform sedentary work with occasional changes

---

[28] 20 C.F.R. § 404.1527(d)(2).

[29] Edwards, 937 F.2d at 584 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).

in position. (R. 288.) Additionally, Dr. Depaz's evaluation limited Plaintiff to work even less strenuous than the restrictions by Drs. Webb and Alpers. (R. 297.)[30] The non-examining state physicians, while consistent with the ALJ's finding that Plaintiff could perform light work, never actually examined Plaintiff. (R. 289-295, 299-305.)

The ALJ also discounted the opinion of Dr. Webb based on the fact that "claimant's own description of his daily activities and lifestyle support the residual functional capacity assessments provided by the state agency medical consultants." (R. 19.) While the Plaintiff's activities, including playing the guitar, household chores, grocery shopping and light yard work might be consistent with light work these activities standing alone are insufficient to support the ALJ's RFC.[31]

The ALJ is required to either give substantial weight to the medical evidence generated by Plaintiff's treating physician or if he decides to discount the opinion of the treating physician he must articulate adequate reasons for doing so, which reasons are supported by substantial evidence in the record. As explained above, although the ALJ articulated reasons for discounting the opinion of Dr. Webb, a careful examination of the record discloses that the reasons discussed by the ALJ are not supported by record and to some degree are contrary to the medical information that is in the record. Accordingly, the Court concludes that the ALJ erred by failing to accord appropriate weight to the opinion of Dr. Webb with regard to Plaintiff's restrictions.

---

[30] Dr. Depaz found that Plaintiff could only sit for a total of two (2) hours and stand or walk for a total of one (1) hour in an 8-hour workday. *Id*.

[31] Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir.1997) (stating that "participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability and does not establish that a claimant can perform sedentary work).

Plaintiff also contends that the ALJ erred by finding that Plaintiff does not have any mental limitations particularly in view of the fact that Dr. Corwin opined that Plaintiff has a major depressive disorder which severely limits Plaintiff's ability to concentrate on work (R. 330). Although this case is due to be reversed and remanded because the ALJ failed to give appropriate weight to the opinion o f Dr. Webb, in view of the fact that the ALJ's assessment of Plaintiff's mental limitations will be relevant to the ALJ's RFC assessment on remand, the Court briefly will address this argument.

The ALJ's conclusion that Plaintiff has no mental limitations and his decision to give little weight to Dr. Corwin are supported by and adequately based upon substantial evidence in the record. The ALJ's primary reason for rejecting Dr. Corwin's opinion is based upon Dr. Poetter's consultative exam. After conducting a psychological evaluation, Dr. Poetter concluded that Plaintiff's "mental status examination is inconsistent with any major affective or thought disturbance." (R. 309.) Notably, as pointed out by the ALJ, Dr. Poetter's report does not contain any specific mental limitations. (R. 307-309.)

Moreover, the ALJ's conclusion that Plaintiff did not have any mental limitations is supported by the fact that there is no record evidence of mental health treatment by Plaintiff. The absence of any mental health treatment or counseling and the absence of any history of mental illness was noted by both Dr. Poetter and Dr. Corwin in their histories of Plaintiff in their respective reports. (307-309, 324-326.) Accordingly, the ALJ did not err by according controlling weight to the opinion of Dr. Poetter and by not according controlling weight to the opinion of Dr. Corwin.

Lastly, with regard to the remaining issues raised by Plaintiff, concerning the ALJ's assessment of Plaintiff's pain and the ALJ's finding that Plaintiff can perform his

13

past relevant work, the Court need not address these issues because on remand the ALJ will be required to address these issues after conducting a new RFC assessment in which appropriate weight is given to the opinion of Plaintiff's treating physician.

### V.  CONCLUSION

In view of the foregoing, it is hereby **ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g) to the Commissioner for the Administrative Law Judge to: (1) properly consider the opinion of Plaintiff's treating physician and accord that opinion the appropriate weight in making a new RFC assessment; and (2) conduct any additional proceedings the Commissioner deems appropriate. The Clerk is directed to enter final judgment and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on March 22, 2007.

_____
GARY R. JONES
United States Magistrate Judge

Copies to:
    All Counsel